**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0676-22

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

J.C-M.,[1]

     Defendant-Appellant.

_____

Submitted March 20, 2024 – Decided July 2, 2024

Before Judges Currier and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Indictment No. 21-06-1438.

Jennifer Nicole Sellitti, Public Defender, attorney for appellant (Alyssa Aiello, Assistant Deputy Public Defender, of counsel and on the brief).

Grace C. MacAulay, Camden County Prosecutor, attorney for respondent (Jason Magid, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

---

[1] We use initials to protect defendant's identity pursuant to Rule 1:38-3(c)(5).

Defendant appeals from the September 1, 2022 order affirming the prosecutor's denial of entry into the Pretrial Intervention Program (PTI). Perceiving no abuse of discretion, we affirm.

In December 2019, defendant was pulled over by law enforcement for a traffic violation. When asked for her credentials, defendant advised she did not have a valid driver's license. During the motor vehicle stop, an officer observed a gun case on the backseat of the car. Defendant told police she found the gun case when she cleaned out her father's storage unit. Defendant opened the case and the police officer saw it contained ammunition.

Defendant first denied to the officer that she had a gun in the car, but during a consensual search, the officer found a loaded handgun in the center console of the front seat. Defendant told the officer the gun belonged to her and that she had removed the gun from the box and put it into the console after being pulled over. Defendant explained she purchased the gun "off the street" a year ago for protection and kept it in a storage unit. Defendant told the officer she had removed the gun from the storage unit earlier that night and put the gun in the car with the intention of killing herself.

Defendant said during an argument with her child's father earlier that night, he told her that "she would be better off dead." Defendant showed the

officer text messages exchanged with her child's father, where she "stated she was going to kill herself" and included a picture of herself holding the gun to her temple. Defendant was arrested and transported to the hospital for a crisis evaluation. She remained in a crisis center for seven days.

During a behavioral assessment completed approximately two weeks after these events, defendant reported she had no suicidal ideation. She declined a psychiatric evaluation, individual therapy, and medication and said she would attend group therapy as a "walk-in" when able to do so. Defendant advised she was only attending the assessment because the Department of Child Protection and Permanency required her to do so.

In June 2021, defendant was charged in an indictment with second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b)(1), and fourth-degree possession of hollow nose bullets, N.J.S.A. 2C:39-3(f)(1). The State's investigation revealed defendant did not apply for and was not issued a permit to carry or purchase a handgun, or a Firearms Purchaser Identification Card. The serial number on the gun was not registered.

In defendant's subsequent application for PTI, she stated that on the day of her arrest, "she was facing an overwhelming mental health crisis . . . that she has since sought treatment for, and she made great strides in her life to provide

A-0676-22

for her young daughter." Defendant asserted that until she took the gun out of its case, she was lawfully transporting it even though she did not lawfully possess it.

The State rejected defendant's application. The State asserted that "[d]efendant appears to have been in the midst of a personal crisis and after her arrest did undergo treatment and therapy as directed." However, the State concluded:

> Defendant has provided nothing regarding her legally purchasing or possessing any firearm. Defendant has submitted no documentation that she lawfully acquired the firearm at issue here. The State is not convinced that defendant's submission constitutes something extraordinary and compelling or idiosyncratic in her background, related to the weapons charge. The State objects to defendant's application on this basis. It is the State's position that defendant has not overcome the presumption of ineligibility based on the second-degree unlawful possession of a weapon charge.

Defendant appealed the denial of her PTI application, arguing it constituted a patent and gross abuse of discretion because the State did not evaluate the factors as required under N.J.S.A. 2C:43-12(e), and ignored defendant's lack of culpable conduct and "otherwise amenability to PTI."

After oral argument, the court remanded the matter to the State to consider defendant's application under the required statutory factors, finding the State

4

abused its prosecutorial discretion in not considering defendant's entire application. The court found the State did not consider defendant's "substantial mental health history" and that defendant "did overcome at least the initial burden of . . . extraordinary and compelling circumstances."

Thereafter, the State submitted an eleven-page letter brief, asserting it considered defendant's PTI application and accompanying documents and concluded it was "not convinced defendant's submissions provided extraordinary and compelling circumstances that would overcome the presumption of PTI ineligibility."

The State determined the following factors under N.J.S.A. 2C:43-12(e) weighed against defendant's admission into PTI: the nature of second-degree and fourth-degree unlawful possession offenses; her initial denial of a gun being in the car; the lack of documentation establishing defendant lawfully acquired or was lawfully permitted to have possession of the gun; the availability of services in the criminal justice system that defendant might require; the lack of indices "that the causes of defendant's criminal behavior can be controlled by proper treatment"; that the "crime [was] not related to a condition or situation conducive to change through participation in PTI"; the needs and interests of society to deter unlawful acquisition and possession of handguns; prosecution

5

would not exacerbate the social problem of "[e]motional abuse by an ex-boyfriend and the mental health issues resulting" from it, because "[t]he issue of defendant's possession of the handgun and carrying the handgun is independent of the communications of [her] ex-boyfriend"; "the presumption of incarceration and mandatory minimum period of incarceration" reflect the seriousness of the second-degree offense and the need to prosecute. The State asserted it was "not convinced . . . defendant was lawfully transport[ing] her firearm," and that possession of an unregistered firearm "is not related to a condition or situation conducive to change through participation in PTI."

The State determined the following factors under N.J.S.A. 2C:43-12(e) weighed in favor of defendant's admission into PTI: defendant's age of nineteen at the time of the offense; the lack of a pattern of anti-social behavior, even though defendant was previously charged with fourth-degree aggravated assault on law enforcement and fourth-degree unlawful possession of weapons offenses, because the disposition of those charges were unknown; defendant "ha[d] no history of penal or criminal violations" and did not "pose a substantial danger to others"; defendant was not charged with possession for an unlawful purpose and there was no evidence that she intended to harm anyone else; and "defendant was the only individual charged under th[e] indictment." The State also

determined that "society," as it relates to defendant's ability to support her child and obtain employment, might benefit from her admission into PTI, but this factor did not overcome the weight of the other factors.

The State determined that defendant's desire to forego prosecution, the fact that this was a victimless offense, and the lack of evidence of any "prior history of physical violence towards others" or defendant's involvement in organized crime were not applicable factors. The State asserted it was "not convinced defendant's crime . . . arose from any personal problems or character traits," and that "[t]he gravamen . . . [wa]s defendant's possession of an unlawfully acquired handgun."

The State concluded that defendant was "not an appropriate candidate for admission to PTI" and denied her application. Defendant again appealed the denial.

After hearing arguments for a second time, the court requested the parties brief the "narrow issue" of "whether a person needs to lawfully possess [a] weapon in order to transport it lawfully" under N.J.S.A. 2C:39-5. Following the submission of briefs and additional arguments, the court stated:

> [I]t's clear to this [c]ourt now that that is not an element of the offense under [N.J.S.A.] 2C:39-5, that it is possible that someone could not have lawfully acquired the weapon, but still lawfully could carry it under

A-0676-22

[N.J.S.A. 2C:]39:5, provided that they're doing it in compliance with [N.J.S.A.] 2C:39-6(e) . . . either being at those certain locations that are detailed in the statute or carrying it between those certain locations if they also, in addition, comply with the requirements under [N.J.S.A.] 2C:39-6(g).

So, it seems to this [c]ourt that the [S]tate's reliance on this issue that she did not lawfully acquire the weapon . . . when it wasn't and isn't an element for the offense of [N.J.S.A.] 2C:39-5, which is what she is charged with here[,] is an error and that it was an improper factor then for the [S]tate to consider that in its decision whether she should come into the PTI program.

Now, what I am not finding, however, is that it is a patent and gross abuse of discretion. I don't find that . . . defendant has shown by clear and convincing evidence that the goals of the program would be undermined. Certainly[,] this defendant has already . . . undergone certain therapeutic services based on the submission, even without the supervision of PTI. It does also seem that she has successfully undergone . . . therapeutic services. There certainly is . . . some harm that is provided to or suffered by all defendants by criminal prosecutions. This defendant has not shown this [c]ourt that she would suffer any sort of unique harm, particularly to . . . her circumstances. There's nothing extraordinary about the harm that would come to her if she was to be prosecuted. These aren't particularly complex charges that would . . . overburden the [c]ourt and these are very serious charges, . . . which potentially causes [a] significant threat to the public.

The trial court denied defendant's appeal in a September 1, 2022 order.

8

Several days later, defendant pleaded guilty to one count of fourth-degree possession of hollow nose bullets. The court sentenced defendant to a three-year term of probation and ordered her to undergo a substance abuse evaluation and cooperate with the recommended treatment.

On appeal, defendant raises the following sole argument for our consideration:

> THE PROSECUTOR'S DENIAL OF PTI WAS A PATENT AND GROSS ABUSE OF DISCRETION; ACCORDINGLY, THE MATTER SHOULD BE REMANDED TO THE TRIAL COURT WITH INSTRUCTIONS TO ADMIT [DEFENDANT] INTO PTI OVER THE PROSECUTOR'S OBJECTION.

Our review of a PTI rejection "is severely limited" and "serves to check only the 'most egregious examples of injustice and unfairness.'" State v. Negran, 178 N.J. 73, 82 (2003) (quoting State v. Leonardis, 73 N.J. 360, 384 (1977)).

"[T]he prosecutor's decision to accept or reject a defendant's PTI application is entitled to a great deal of deference." State v. Roseman, 221 N.J. 611, 624 (2015). "[T]o overturn a prosecutor's decision to exclude a defendant from the program, the defendant must '"clearly and convincingly"' show that the decision was a '"patent and gross abuse of . . . discretion."'" State v. K.S., 220 N.J. 190, 200 (2015) (quoting State v. Wallace, 146 N.J. 576, 582 (1996)).

A-0676-22

"Issues concerning the propriety of the prosecutor's consideration of a particular [PTI] factor are akin to 'questions of law'" and must be reviewed de novo. State v. Denman, 449 N.J. Super. 369, 375-76 (App. Div. 2017) (alteration in original) (quoting State v. Maddocks, 80 N.J. 98, 104-05 (1979)).

"PTI is a 'diversionary program through which certain offenders are able to avoid criminal prosecution by receiving early rehabilitative services expected to deter future criminal behavior.'" Roseman, 221 N.J. at 621 (quoting State v. Nwobu, 139 N.J. 236, 240 (1995)).

"[A]cceptance into PTI is dependent upon . . . consent of the prosecutor. The assessment of a defendant's suitability for PTI must be conducted under the Guidelines for PTI provided in Rule 3:28, along with consideration of factors listed in N.J.S.A. 2C:43-12(e)." Ibid. (citation reformatted). "Additionally, a PTI determination requires that the prosecutor make an individualized assessment of the defendant considering his or her '"amenability to correction" and potential "responsiveness to rehabilitation."'" Id. at 621-22 (quoting State v. Watkins, 193 N.J. 507, 520 (2008)).

Under Rule 3:28-1(d),

> [P]ersons who are not ineligible for pretrial intervention under paragraph (c) shall be ineligible for pretrial intervention without prosecutor consent to consideration of the application:

> (1) Certain Crimes. A person who is charged with a crime, or crimes, for which there is a presumption of incarceration or a mandatory minimum period of parole ineligibility.

Since a second-degree offense falls into this category, there is a statutory presumption against acceptance into PTI. Roseman, 221 N.J. at 622. "To rebut the presumption against admission . . . , applicants shall include with their application for admission a statement of the extraordinary and compelling circumstances that justify consideration of the application notwithstanding the presumption against admission." R. 3:28-1(e)(3).

When considering a PTI application, prosecutors are required to consider the factors enumerated in N.J.S.A. 2C:43-12(e). For a trial court to overcome prosecutorial discretion owed to the prosecutor, the circumstances must ""clearly and convincingly establish that the prosecutor's refusal to sanction admission into the program was based on a patent and gross abuse of . . . discretion."" Roseman, 221 N.J. at 624-25 (quoting Wallace, 146 N.J. at 582).

> Ordinarily, an abuse of discretion will be manifest if defendant can show that a prosecutorial veto (a) was not premised upon a consideration of all relevant factors, (b) was based upon a consideration of irrelevant or inappropriate factors, or (c) amounted to a clear error in judgement. In order for such an abuse of discretion to rise to the level of "patent and gross," it must further be shown that the prosecutorial error complained of

11

> will clearly subvert the goals underlying Pretrial Intervention.
>
> [State v. Bender, 80 N.J. 84, 93 (1979) (citation omitted).]

"The question is not whether [a court would] agree or disagree with the prosecutor's decision, but whether the prosecutor's decision could not have been reasonably made upon weighing the relevant factors." Nwobu, 139 N.J. at 254.

Governed by these principles, we discern no basis to reverse the challenged order denying defendant's PTI appeal.

Defendant was charged with a second-degree crime which carries a presumption of imprisonment, N.J.S.A. 2C:44-1(d), and is subject to a mandatory minimum period of parole ineligibility, N.J.S.A. 2C:43-6(c). Therefore, her acceptance into PTI was dependent on the State's consent.

The prosecutor thoroughly analyzed each statutory factor and determined defendant did not meet her burden to overcome the presumption of denial into PTI. We are unpersuaded by defendant's contention the prosecutor improperly weighed the applicable aggravating and mitigating factors. The State did not solely rely on the unlawful acquisition of the gun. We see nothing in this exercise of prosecutorial discretion that approaches an egregious injustice or unfairness as to warrant our intervention. See Negran, 178 N.J. at 82.

12

Furthermore, after several submissions of briefs and rounds of oral arguments, the trial court determined the prosecutor's determination was not a "patent and gross abuse of discretion" that warranted reversal. We see no reason to disturb that decision.

To the extent we have not specifically addressed them, any remaining arguments raised by defendant lack "sufficient merit to warrant discussion." R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-0676-22